UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DARRELL HURT,

               Plaintiff,                       CIVIL ACTION NO. 07-12503

       v.                             DISTRICT JUDGE MARIANNE O. BATTANI

THOMAS BIRKETT, R. HUGHES       MAGISTRATE JUDGE VIRGINIA M. MORGAN
LUCYNSKI, WATSON, GRABOWSKI,
JOHN DOE 1-6, JANE DOE, BUTCH,
NOBLE, SHARP, K. PETERS,
C. MILLER, BAILEY, and LOCKWOOD,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff

of his rights under the United States Constitution.  The matter comes before the court on Birkett,

Hughes, Watson, Grabowski, Sharp, Peters, Miller, Bailey and Lockwood's Motion to Dismiss

and/or in the alternative, for Summary Judgment (D/E #39).  For the reasons discussed below,

this Court recommends that defendants' motion be **GRANTED** and the case dismissed.  All the

claims against defendants in their official capacities are barred by the Eleventh Amendment to

the United States Constitution and should be dismissed.  To the extent plaintiff's claims are

against the defendants in their individual capacities, either plaintiff has failed to state a claim upon which relief can be granted or defendants are entitled to summary judgment. Specifically, plaintiff has failed to state an equal protection claim against any defendant, a conspiracy claim against Hughes, Peters or Miller, a retaliation claim against Miller or Bailey, or a deliberate indifference claim against Bailey. Hughes and Peters are entitled to summary judgment on the claim that they covered up an incident where plaintiff's arm was broken. Watson and Grabowski are entitled to summary judgment on the claim that they used excessive force against plaintiff.

## II. Background

On June 12, 2007, plaintiff filed the complaint in this matter (D/E #1). However, defendants subsequently filed an amended motion for a more definite statement (D/E #22) and plaintiff filed a motion to amend his complaint (D/E #25). Given the subject matter of plaintiff's motion to amend his complaint, this Court construed it as a response to defendants' amended motion for a more definite statement. On August 31, 2007, this Court granted defendants' amended motion for a more definite statement and ordered plaintiff to file an amended complaint no later than October 15, 2007 (D/E #29).

### A. Amended Complaint

On September 13, 2007, plaintiff filed an amended complaint (D/E #31).[1] In that amended complaint, plaintiff alleges that, on July 25, 2006, defendants Watson and Grabowski, along with some other correctional officers, deliberately broke plaintiff's left arm. (Amended

---

[1]Plaintiff's amended complaint attempted to add new parties to this action, but as the Court had not given him leave to do so, the amended complaint was stricken as to the new defendants (D/E #42).

Complaint, ¶ 1)  Additionally, Watson allegedly told plaintiff that they were going to teach plaintiff a lesson.  (Amended Complaint, ¶ 1)  Plaintiff also alleges that defendant Bailey attempted to convince plaintiff to renounce a grievance plaintiff had filed and, after plaintiff refused to do so, Bailey delayed plaintiff's transfer to another hospital for seven or eight hours. (Amended Complaint, ¶ 3)  Plaintiff further alleges that Bailey falsely stated she had interviewed plaintiff in response to a grievance when she had not.  (Amended Complaint, ¶ 3)  Plaintiff also alleges that, on January 19, 2007, defendant Miller wrote a falsified misconduct report regarding plaintiff in retaliation for plaintiff filing this suit over his left arm being broken.  (Amended Complaint, ¶ 5)

Plaintiff further alleges that defendants Miller, Peters and Hughes, along with others, entered into an unlawful conspiracy on September 6, 2006, November 29, 2006, and January 19, 2007, "to deny plaintiff of serious medical need in violation of my Eighth Amendment (sic)." (Amended Complaint, ¶ 6)  With respect to defendant Hughes, plaintiff also alleges that Hughes, when writing a report about the incident where plaintiff's arm was broken, left out the names of the correctional officers who had broken plaintiff's arm and that Hughes, when reviewing one of plaintiff's misconduct reports, told plaintiff that plaintiff was lucky they did not break both of plaintiff's arms.  (Amended Complaint, ¶ 7)

Plaintiff further alleges that defendant Peters failed to inform defendant Noble of plaintiff's broken arm and that Peters tried to cover up for other officers.  (Amended Complaint, ¶ 8)  Lastly, plaintiff alleges that the campaign of harassment against him is unexplainable on any grounds other than race.  (Amended Complaint, ¶ 10)

### B. Motion Pending Before the Court

On December 6, 2007, defendants filed a motion to dismiss and for summary judgment (D/E #39).  In that motion, defendants argue that plaintiff's Eighth Amendment rights were not violated because defendants did not use excessive force in restraining plaintiff and because plaintiff was not denied medical care following the incident.  Defendants also argue that plaintiff's allegation regarding an eight-hour delay for a hospital trip fails to state a claim upon which relief can be granted given the lack of dates and details found in the claim.  Defendants further allege that, given the dates provided in plaintiff's amended complaint, plaintiff has failed to state a claim for retaliation with respect to the misconduct ticket because there is no causation where the adverse act preceded the protected conduct.  Defendants also argue that the plaintiff's unsupported allegations of racial discrimination do not state a claim for violation of the Equal Protection Clause.  Lastly, defendants argue that they are entitled to Eleventh Amendment and qualified immunities.

On March 19, 2007, plaintiff filed a response to defendants' motion to dismiss and for summary judgment (D/E #53).  In that response, plaintiff argues that defendants incorrectly based their motion on the amended complaint and that plaintiff's original complaint states a claim upon which relief can be granted.  Plaintiff also argues that, while defendants correctly note that there is no genuine issue of material fact in this case, plaintiff is the party entitled to summary judgment.

## III. Standards of Review

### A. Dismissal

Defendants move to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). Under the traditional rule, when "considering a Fed.R.Civ.P. 12(b)(6) motion to dismiss, '[t]he district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'" Amadasu v. The Christ Hosp., 514 F.3d 504, 506 (6th Cir. 2008), quoting Columbia Natural Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995).

However, the Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). In Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Twombly, 127 S.Ct. at 1964-65 (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief"), characterizing

that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading

standard." Twombly, 127 S.Ct. at 1969.

### B. Summary Judgment

Defendants also move for summary judgment pursuant to Federal Rule of Civil

Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim

is asserted or a declaratory judgment is sought may, at any time, move without or without

supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw

all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co.,

Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once

the moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106

S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his

pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

As a preliminary matter, it should be noted that, despite plaintiff's statements to the contrary, it is plaintiff's amended complaint that is at issue here. While this Court ordered that plaintiff's amended complaint be stricken as to the new defendants, the rest of the amended complaint was allowed because it provided a more definite statement of plaintiff's pleading than the original complaint (D/E #42).

### A. Claims Against Defendants in Their Official Capacities

As argued by defendants, the Eleventh Amendment bars plaintiffs claims against them to the extent they are sued in their official capacities. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

"'It is … well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State." Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "Whether a suit against State

officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief'." Doe, 21 F.3d at 736. Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants. Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress from defendants, all of whom are MDOC officials, for past violations of his legal rights and, therefore, the suit is deemed to be against Michigan itself. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the extent plaintiff's claims against defendants are construed to be brought against them in their official capacities, the claims are barred by the Eleventh Amendment.

## B. Claims Against Defendants in Their Individual Capacities

To the extent plaintiff's claims are against defendants in their individual capacities, defendants argue they are entitled to qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the

importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" <u>Flint ex rel. Flint v. Kentucky Dept. of Corrections</u>, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting <u>Poe v. Haydon</u>, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. <u>Saucier</u>, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." <u>Saucier</u>, 533 U.S. at 201.

### 1. Birkett, Sharp and Lockwood

Plaintiff makes no claims directly against Birkett, Sharp or Lockwood in his amended complaint. At best, they are part of a claim plaintiff possibly makes against all of the defendants under the Equal Protection Clause of the United States Constitution. Specifically, plaintiff alleges that the campaign of harassment against him is unexplainable on any grounds other than race. (Amended Complaint, ¶ 10)

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class" or burdened a fundamental right.  Midkiff v. Adams County Regional Water District, 409 F.3d 758, 770 (6th Cir. 2005) quoting Purisch v. Tenn. Tech. Univ., 76 F.3d 1414, 1424 (6th Cir.1996) (citations omitted).

In this case, plaintiff's equal protection claim consists solely of the statement that "[a] campaign of harassment, a clear pattern, unexplainable on grounds other than race, emerges from the effect of state action even where the officers are dead wrong."  [Amended Complaint, ¶ 10] That single, conclusory allegation is insufficient to raise plaintiff's right to relief above the speculative level.  Plaintiff's own allegation implies that he has no basis for alleging racial discrimination and, instead, he merely views it as an explanation for the alleged harassment. Moreover, plaintiff apparently views racial discrimination as the sole explanation for defendants' actions despite the fact that he also alleges that certain defendants acted out of retaliation.  As discussed above, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S.Ct. at 1964-65 (citations and quotation marks omitted). With respect to any equal protection claim against Birkett, Sharp or Lockwood, plaintiff has failed to meet that obligation and the claim should be dismissed.[2]  Moreover, as it appears that

---

[2]To the extent plaintiff's equal protection claim encompasses the other defendants who brought this motion, it should also be dismissed for a failure to state a claim upon which relief can be granted.

the equal protection claim is the only potential allegation regarding Birkett, Sharp and Lockwood, they should be dismissed from this action.

## 2. Hughes

In his amended complaint, plaintiff alleges that Hughes, along with others, entered into an unlawful conspiracy on September 6, 2006, November 29, 2006, and January 19, 2007, "to deny plaintiff of serious medical need in violation of my Eighth Amendment (sic)." (Amended Complaint, ¶ 6)  Plaintiff also alleges that Hughes, when writing a report about the incident where plaintiff's arm was broken, left out the names of the correctional officers who had broken plaintiff's arm and that Hughes told plaintiff that plaintiff was lucky they did not break both of plaintiff's arms. (Amended Complaint, ¶ 7)

### a. Conspiracy to Deny Plaintiff Medical Care

As noted above, plaintiff alleges that Hughes, along with others, entered into an unlawful conspiracy on September 6, 2006, November 29, 2006, and January 19, 2007, "to deny plaintiff of serious medical need in violation of my Eighth Amendment (sic)." (Amended Complaint, ¶ 6) "It is well-settled that conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir. 1987). See also Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir.1984) (conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory").

In this case, plaintiff has clearly failed to allege his conspiracy claim against Hughes with any degree of specificity. While plaintiff identifies the dates and purpose of the alleged conspiracy, there are no other details or allegations regarding any specific acts in furtherance of that conspiracy. Plaintiff's claim against Hughes consists of broad language alleging conspiracy, but the factual details necessary to support such a claim are absent. Consequently, plaintiff's conspiracy claim against Hughes must be dismissed.

### b. Failure to Report Claim

Plaintiff also alleges that Hughes, when writing a report about the incident where plaintiff's arm was broken, left out the names of the correctional officers who had broken plaintiff's arm and that Hughes told plaintiff that plaintiff was lucky they did not break both of plaintiff's arms. (Amended Complaint, ¶ 7)

Along with their motion to dismiss and/or for summary judgment, defendants attached a "Critical Incident Report" (Critical Incident Report, attached as Exhibit 2 to Defendants' Motion to Dismiss and/or for Summary Judgment). Hughes filled out at least the initial portion of the Critical Incident Report (Critical Incident Report, pp. 1-2) and he specifically identifies the prison staff who were involved in or who witnessed the incident, both in his description of the incident and in separate identification sections (Critical Incident Report, pp. 1-3). Moreover, that Critical Incident Report contains a number of statements by the other participants in the incident. (Critical Incident Report, pp. 7-30). Given the totality of that report, which was compiled the same day as the incident itself, Hughes clearly did not attempt to cover up the incident.

In his response, plaintiff fails to produce any evidence in demonstrating that a genuine issue of fact exists with respect to his claim that Hughes failed to identify the officers involved in the incident and, instead, he merely rests upon the allegations contained in his pleadings. By doing so, plaintiff has failed to submit evidence demonstrating that a material issue of fact exists and Hughes is entitled to summary judgment. Banks, 330 F.3d at 892; Fed. R. Civ. P. 56(e).

### 3. Watson and Grabowski

In his amended complaint, plaintiff alleges that, on July 25, 2006, Watson and Grabowski, along with some other correctional officers, deliberately broke plaintiff's left arm. (Amended Complaint, ¶ 1)  Plaintiff also alleges that Watson told plaintiff that they were going to teach plaintiff a lesson.  (Amended Complaint, ¶ 1)

In Hudson v. McMillian, 503 U.S. 1, 8-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court clarified the law applicable to convicted prisoners' excessive-force claims.  In that case, the Supreme Court held that when corrections officials use force to keep order, and this force is alleged to violate the Eighth Amendment rights of prisoners, "the core judicial inquiry is . . .  whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7, citing Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  See also U.S. v. Budd, 496 F.3d 517, 531 (6th Cir. 2007).  Controlling an emergency situation and maintaining order are legitimate penological justifications.  Budd, 496 F.3d at 531.  However, when safety concerns have abated or an emergency has been dispelled, that justification may disappear.  Budd, 496 F.3d at 531. Moreover "unnecessary and wanton inflictions of pain are those that are totally without

penological justification." Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citations omitted).

In this case, Watson and Grabowski argue that they are entitled to summary judgment in light of the video they submitted of the incident forming the basis for this complaint.[3] In that video, an inmate is sitting and eating at a table, and he has his back to the entrance of the room. Another inmate comes through the entrance and attacks the first inmate with a tray. The two inmates commence fighting and correctional officers quickly intervene. Eventually, the struggle spills into the hallway and both the inmates and the correctional officers fall to the ground, where they stayed until the inmates are subdued. In his brief in response to defendants' motion for summary judgement, plaintiff identifies himself as the inmate who originally attacked the other (Plaintiff's Response Brief, p. 1). Moreover, the Major Misconduct Hearing Report and the Critical Incident Report attached to defendants' motion also describe the incident while finding that plaintiff was the original aggressor and that force needed to be applied. (Attached as Exhibits 1 and 2 to Defendants' Motion to Dismiss and/or for Summary Judgment)

Given that video and the reports of the incident, which display as plaintiff starting an altercation and needing to be subdued, it is clear that the force applied by Watson and Grabowski was applied in a good-faith effort restore discipline. Watson and Grabowksi have, therefore, met their initial burden of demonstrating the absence of a genuine issue of material fact through admissible evidence. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. In his response, however,

---

[3]The video was entered as Exhibit 5 to Defendants' Motion to Dismiss and/or for Summary Judgment, but it has its own Docket Entry (D/E #40).

plaintiff fails to produce any evidence demonstrating that a genuine issue of fact exists and, instead, he merely rests upon the allegations contained in his pleadings. By doing so, plaintiff has failed to submit evidence demonstrating that a material issue of fact exists and Watson and Grabowski are entitled to summary judgment. <u>Banks</u>, 330 F.3d at 892; Fed. R. Civ. P. 56(e).

### 4. Peters

In his amended complaint, plaintiff alleges that Peters entered into an unlawful conspiracy with others on September 6, 2006, November 29, 2006, and January 19, 2007, "to deny plaintiff of serious medical need in violation of my Eighth Amendment." (Amended Complaint, ¶ 6) Plaintiff also alleges that defendant Peters failed to inform PA Noble of plaintiff's broken arm and that Peters tried to cover up for other officers. (Amended Complaint, ¶ 8)

### a. Conspiracy Claim

Plaintiff alleges that Peters entered into an unlawful conspiracy with others on September 6, 2006, November 29, 2006, and January 19, 2007, "to deny plaintiff of serious medical need in violation of my Eighth Amendment." (Amended Complaint, ¶ 6)

As discussed above, however, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." <u>Gutierrez</u>, 826 F.2d at 1538-39. <u>See</u> <u>also</u> <u>Jaco</u>, 739 F.2d at 245.

In this case, plaintiff has clearly failed to allege his conspiracy claim against Peters with any degree of specificity. While plaintiff identifies the dates and purpose of the alleged

conspiracy, there are no other details or allegations regarding any specific acts in furtherance of that conspiracy. Plaintiff's claim against Peters consists of broad language alleging conspiracy, but the factual details necessary to support such a claim are absent. Consequently, plaintiff's conspiracy claim against Peters must be dismissed.

### b. Cover Up Claim

Plaintiff also alleges that defendant Peters failed to inform PA Noble of plaintiff's broken arm and that Peters tried to cover up for other officers. (Amended Complaint, ¶ 8)

Along with their motion to dismiss and/or for summary judgment, defendants attached a "Critical Incident Report" (Critical Incident Report, attached as Exhibit 2 to Defendants' Motion to Dismiss and/or for Summary Judgment). While Peters was not mentioned or involved in that report, the Critical Incident Report, compiled the same day as the incident itself, details the specific identities of the prison staff who were involved in or who witnessed the incident, both in Hughes' description of the incident and in separate identification sections (Critical Incident Report, pp. 1-3). The Critical Incident Report also contains a number of statements by the other participants in the incident (Critical Incident Report, pp. 7-30) and it displays both the incident was reported and that plaintiff received medical care the very day of the incident (Critical Incident Report, pp. 3, 17-18, 25-30). Given the totality of that report, which was compiled the same day as the incident itself, there was no attempt to cover up the incident by Peters or anyone else.

In his response, plaintiff fails to produce any evidence in demonstrating that a genuine issue of fact exists with respect to his claim that Peters tried to cover up for other officers

involved in the incident and, instead, he merely rests upon the allegations contained in his pleadings.  By doing so, plaintiff has failed to submit evidence demonstrating that a material issue of fact exists and Peters is entitled to summary judgment.  Banks, 330 F.3d at 892; Fed. R. Civ. P. 56(e).

### 5. Miller

In his amended complaint, plaintiff alleged that, on January 19, 2007, Miller wrote a falsified misconduct report regarding plaintiff in retaliation for plaintiff filing this suit over his left arm being broken.  (Amended Complaint, ¶ 5)  Plaintiff also alleged that Miller entered into an unlawful conspiracy on September 6, 2006, November 29, 2006, and January 19, 2007, "to deny plaintiff of serious medical need in violation of my Eighth Amendment."  (Amended Complaint, ¶ 6)

### a. Retaliation Claim

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context."  Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir.2002) (internal quotation marks

omitted).  In this case, Miller argues that there is no genuine issue of material fact with respect to the third elements of a retaliation claim, i.e. causation.

Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision-maker is at issue and the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity.  Thaddeus-X, 175 F.3d at 399. Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment.  Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001).  There is no causation where the defendant is not the decision-maker.  See Smith, 250 F.3d at 1038 (holding that one of the defendants' comments did not demonstrate a causal connection between plaintiff's filing of grievances and the decision to transfer plaintiff because it was uncontroverted that the defendant making the comment was not the decision-maker in the case).  Moreover, while retaliation can rarely be supported with direct evidence of intent, the plaintiff must have more than conclusory allegations of retaliatory motive unsupported by material facts. Harbin-Bey v. Rutter,  420 F.3d 571, 580 (6th Cir. 2005).

In this case, while plaintiff alleges that Miller retaliated against him for filing the lawsuit in this case as it pertains to plaintiff's claim that his left arm was broken by defendants, the dates do not support plaintiff's claim.  This lawsuit was filed on June 12, 2007 (D/E #1) while plaintiff alleges that Miller wrote the misconduct ticket in retaliation for the lawsuit on January 19, 2007 (Amended Complaint, ¶ 5), which is prior to the lawsuit be filed.  A claim for retaliation requires that the adverse action was taken, at least in part, because of the protected conduct.  Thaddeus-X,

175 F.3d at 394. In this case, the adverse action was taken prior to the protected conduct and, therefore, plaintiff has failed to state a claim for retaliation against Miller.

### b. Conspiracy Claim

Plaintiff also alleges that Miller entered into an unlawful conspiracy on September 6, 2006, November 29, 2006, and January 19, 2007, "to deny plaintiff of serious medical need in violation of my Eighth Amendment." (Amended Complaint, ¶ 6)

As discussed above, however, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." Gutierrez, 826 F.2d at 1538-39. See also Jaco, 739 F.2d at 245.

In this case, plaintiff has clearly failed to allege his conspiracy claim against Miller with any degree of specificity. While plaintiff identifies the dates and purpose of the alleged conspiracy, there are no other details or allegations regarding any specific acts in furtherance of that conspiracy. Plaintiff's claim against Miller consists of broad language alleging conspiracy, but the factual details necessary to support such a claim are absent. Consequently, plaintiff's conspiracy claim against Miller must be dismissed.

**6. Bailey**

In his amended complaint, plaintiff alleged that Bailey attempted to convince plaintiff to renounce a grievance he had filed and, after plaintiff refused to do so, Bailey delayed plaintiff's transfer to another hospital for seven or eight hours. (Amended Complaint, ¶ 3) That claim could be viewed both as a retaliation claim and a deliberate indifference claim.

**a. Retaliation Claim**

As discussed above, to state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X, 175 F.3d at 394.

In this case, plaintiff has failed to state a claim for retaliation against Bailey. Nowhere in plaintiff's amended complaint does he describe when and why he needed to go to the hospital or any possible injury he could have suffered from the delay in going to the hospital. Without such facts, the court has no way of determining whether any delay was an adverse act. While a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Twombly, 127 S.Ct. at 1964-65 (internal citation and quotation marks omitted). In this case, plaintiff has failed to make sufficient factual allegations with respect to his retaliation claim against Bailey and, therefore, that claim must be dismissed.

**b. Deliberate Indifference**

Elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's obligation to provide medical care for those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See Estelle, 429 U.S. at 103-104. To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300. The objective element is satisfied by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297. "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004). However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'" Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001). To satisfy the subjective component of the adequate medical care test,

the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition. Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted). However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" Comstock, 273 F.3d 703, quoting Farmer, 511 U.S. at 835. Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

As discussed above, plaintiff's amended complaint completely fails to describe when and why he needed to go to the hospital or any possible injury he could have suffered from the delay in going to the hospital. Without such information, the court has no way of determining whether Bailey was deliberately indifferent to a serious medical need, therefore, plaintiff has failed to make sufficient factual allegations with respect to his deliberate indifference claim against Bailey and that claim must be dismissed.

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion to dismiss and/or for summary judgment be **GRANTED**. All the claims against defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution and should be dismissed. To the extent plaintiff's claims are against the defendants in their individual capacities, either plaintiff has failed to state a claim upon which relief can be granted or defendants are entitled to summary judgment. Specifically, plaintiff has failed to state an Equal Protection claim against any defendant, a conspiracy claim against Hughes, Peters or Miller, a retaliation claim against Miller or Bailey, or a deliberate indifference claim against Bailey. Hughes and Peters are entitled to summary judgment on the claim that they covered up an incident where plaintiff's arm was broken. Watson and Grabowski are entitled to summary judgment on the claim that they used excessive force against plaintiff.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: May 28, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on May 28, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan